IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SEAN CUSACK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06 C 2507 |
| ) | |
| CITY OF DES PLAINES, OFFICER ) | |
| BRZEZINSKI, OFFICER BRIAN MARTIN, ) | |
| and OFFICER JOSEPH SPALLONE, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On November 11, 2006, Plaintiff Sean Cusack filed the present Amended Complaint bringing federal claims of excessive force and unlawful arrest, *see* 42 U.S.C. § 1983, as well as state law claims of battery, false arrest and false imprisonment, malicious prosecution, and indemnification against Defendant Police Officers Brzezinski, Joseph Spallone, and Brian Martin, as well as the City of Des Plaines. On January 30, 2007, the Court granted Cusack's motion to voluntarily dismiss Officers Brzezinski and Spallone as Defendants from this lawsuit. Before the Court is Officer Martin's and the City of Des Plaines' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

During the relevant time period, Cusack was the manager of Butera Market located at 727 Golf Road, Des Plaines, Illinois. (R. 45-1, Defs.' Rule 56.1 Stmt. Facts ¶ 2; R. 52-1, Pl.'s Rule 56.1 Stmt. Facts ¶ 3.) On May 6, 2005, Cusack was involved in an incident with Artur

Gibala in Butera Market's parking lot and as a result, Cusack called 911. (Defs.' Stmt. Facts ¶ 5.) Cusack made two calls to 911 informing the police dispatcher that Gibala tried to hit him with his car. (*Id*. ¶ 9; Pl.'s Stmt. Facts ¶¶ 6, 10.) Officer Martin, who is a police officer employed by the City of Des Plaines, was on duty that day working the afternoon shift. (Defs.' Stmt. Facts ¶¶ 4, 6.) Officer Martin was dispatched to the Butera Market at approximately 10:40 p.m. on May 6, 2005. (*Id*. ¶ 7.)

After Officer Martin arrived at the Butera Market, Gibala informed Officer Martin that Cusack had told him to leave the store, that Cusack followed him outside, threw a piece of paper at him, yelled, and then pushed him. (*Id*. ¶ 17.) Meanwhile, Cusack informed Officer Martin that he was the manager of the Butera Market and that he did not want Gibala in the store because of past problems. (*Id.* ¶ 19; Pl.'s Stmt. Facts ¶ 2.) At his deposition, Cusack testified that when he and a cashier departed the Butera Market and walked into the parking lot, Gibala drove up and Cusack managed to move out of the way of Gibala's speeding car. (Pl.'s Stmt. Facts ¶¶ 4, 5.) Cusack also testified that he told Officer Martin that Gibala had tried to run him over. (*Id.* ¶ 13.) Cusack admitted that he was upset and was speaking loudly that night. (Defs.' Stmt. Facts ¶¶ 22, 23.)

Thereafter, Officer Martin arrested Cusack, handcuffed him, placed him in a police car, and transported him to the police station. (Pl.'s Stmt. Facts ¶ 28; Defs.' Stmt. Facts ¶ 27.) Cusack asserts that Officer Martin placed the handcuffs on him in a hard and aggressive manner. (Pl.'s Stmt. Facts ¶ 29; Defs' Stmt. Facts ¶ 28.) Cusack asked Officer Martin to loosen the handcuffs, but Officer Martin did not do so, explaining that they would be at the police station soon. (Pl.'s Stmt. Facts ¶ 29; Defs' Stmt. Facts ¶ 28.) According to Cusack, he wanted the

handcuffs loosened because he was experiencing a lot of pain, and approximately 20 years ago he had broken a bone in his left hand. (Defs.' Stmt. Facts ¶ 29.) At his deposition, however, Cusack admitted that he did not tell Officer Martin about his prior injury and that he was in pain. (Defs.' Resp. Pl.'s Facts ¶¶ 29, 30, Cusack Dep. at 36-37.) Meanwhile, Cusack was handcuffed for 20-30 minutes. (Defs.' Stmt. Facts ¶ 34.) As a result of the tight handcuffs, Cusack maintains that he suffered pain between the joints of his left thumb and wrist, that he was bruised there, and that he still experiences pain. (*Id.* ¶¶ 30, 31, 34; Defs.' Stmt. Facts ¶ 30.) Cusack did not seek medical treatment after he was handcuffed. (Defs.' Stmt. Facts ¶ 32.)

Officer Martin charged Cusack with a city ordinance violation for battery and Gibala signed the battery complaint against Cusack. (*Id.* ¶¶ 37, 38.) Eventually, the battery complaint against Cusack was dismissed for want of prosecution. (*Id.* ¶ 39; Pl.'s Stmt. Facts ¶ 34.)

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548,

2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## ANALYSIS

In his Amended Complaint, Cusack alleges constitutional claims of excessive force (Count I) and false arrest (Count III). Cusack also brings Illinois claims of battery (Count II), false arrest and false imprisonment (Count IV), malicious prosecution (Count V), and indemnification (Count VI).

**I.  Excessive Force Claim – Count I**

In Count I of his Amended Complaint, Cusack alleges that Officer Martin used excessive force because he applied the handcuffs aggressively to Cusack's wrists. Excessive force claims invoke the Fourth Amendment's prohibition against unreasonable seizures. *Graham v. Connor,* 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "To determine whether the force used to effect a seizure is unreasonable, we must examine the 'totality of the circumstances' surrounding the incident." *Sallenger v. Oakes,* 473 F.3d 731, 739 (7th Cir. 2007) (citing *Tennessee v. Garner,* 471 U.S. 1, 8-9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396 (citing *Terry v. Ohio,* 392 U.S. 1, 20-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Thus, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397; *Tibbs v. City of Chicago,* 469 F.3d 661, 666 (7th Cir. 2006) (internal

4

citations omitted).

In *Tibbs*, the Seventh Circuit reviewed its own precedent concerning excessive force claims based on tight handcuffs:

> We have on occasion recognized valid excessive force claims based on overly tight handcuffs. In *Payne v. Pauley,* 337 F.3d 767 (7th Cir. 2003), there was evidence that the arresting officers handcuffed the plaintiff so tightly she lost feeling in her hands and refused to loosen the cuffs when she told them of the numbness. The plaintiff later underwent two carpal tunnel surgeries she said were necessitated by the handcuffing, and we held summary judgment under these circumstances was inappropriate.
>
> In *Herzog v. Village of Winnetka,* 309 F.3d 1041 (7th Cir. 2002), we held the plaintiff was entitled to a jury trial on her excessive force claim where she produced evidence that the arresting officer lacked probable cause for the arrest, shoved her to the ground even though she was not resisting, cracked her tooth by forcing a breath-screening device into her mouth, waited over an hour to loosen handcuffs she complained were too tight, and subjected her to blood and urine testing at a hospital, even though she had passed all field sobriety tests and had registered a 0.00 Breathalyzer reading. *See also Lester v. City of Chicago*, 830 F.2d 706, 714 (7th Cir. 1987) (a properly instructed jury could have found excessive use of force if it believed plaintiff's testimony that even though she did not resist arrest, officers threatened to punch her, kneed her in the back, dragged her down a hallway, and handcuffed her so tightly her wrists were bruised).

*Tibbs*, 469 F.3d at 666 (internal citations omitted).

The Seventh Circuit distinguished the facts in *Payne* from the plaintiff in *Tibbs* – "the plaintiff in *Payne* told the officers her hands were numb and ultimately underwent two surgeries because of wrist injuries caused by the too-tight handcuffs," whereas the plaintiff in *Tibbs* only complained once to the police officer and "gave the officers no indication of the degree of his pain, experienced minimal (if any) injury, and sought no medical care." *Id*. The *Tibbs* court also distinguished *Herzog* and *Lester*:

> The plaintiffs in *Herzog* and *Lester* experienced tight handcuffing more akin to the discomfort Tibbs alleges, but the decisions in those cases were hardly based on overly tight handcuffs alone. The *Herzog* and *Lester* plaintiffs presented

5

> evidence they had suffered numerous additional injuries, including a cracked tooth, plainly gratuitous blood and urine testing, being kneed in the back, and being dragged down a hallway.

*Id.* (citations omitted).

Viewing the facts Cusack's favor, he has failed to present sufficient evidence raising a genuine issue of material fact that Officer Martin's conduct was unreasonable under the totality of the circumstances. Specifically, Cusack sets forth evidence that Officer Martin placed the handcuffs on him in a hard and aggressive manner and that when Cusack asked Officer Martin to loosen the handcuffs, Officer Martin did not do so. At his deposition, however, Cusack admits that he did not tell Officer Martin that he was in a lot of pain and that he had previously broken a bone in his left hand. (*See* Defs.' Resp. Pl.'s Facts ¶¶ 29, 30, Cusack Dep. at 36-37.) Nonetheless, Cusack argues that Officer Martin's conduct was unreasonable because he suffered pain between the joints of his left thumb and wrist and that he was bruised. On the other hand, Defendants set forth undisputed evidence that Cusack did not seek medical treatment after being handcuffed and that Cusack was handcuffed for only 20-30 minutes.

The facts viewed in favor of Cusack simply do not rise to the level of the officers' conduct in *Lester* and *Herzog* where "plaintiffs presented evidence they had suffered numerous additional injuries, including a cracked tooth, plainly gratuitous blood and urine testing, being kneed in the back, and being dragged down a hallway." *Tibbs*, 469 F.3d at 666. Indeed, the officer's conduct in *Payne* was more severe than Cusack's allegations that Officer Martin placed him in handcuffs in a hard and aggressive manner and did not loosen the handcuffs when Cusack asked. Specifically, in *Payne*, the plaintiff set forth evidence that the police officer "unsnapped his holster and held his arms over his head as if to strike her and that he ran at her knocking into

6

her body with his stomach and chest" and then forced "her arms behind her back, twisting her arm, and over-tightening the handcuffs." *Payne,* 337 F.3d at 779.

The *Tibbs* decision further underscores the Court's conclusion that Cusack has not set forth sufficient evidence creating a genuine issue of fact that Officer Martin's conduct was unreasonable under the circumstances. As discussed, the *Tibbs* court concluded that the plaintiff did not establish excessive force because he only complained once to the police officer, did not tell the officers about the degree of his pain, and did not seek medical care: facts that are almost identical to the undisputed facts of this case. *Id.* at 666. The facts in *Tibbs* are:

> Tibbs likely suffered some discomfort and pain from handcuffs that Officer Kooistra applied somewhat too tightly; Tibbs complained to Officer Kooistra once about his handcuffs without elaborating on any injury, numbness, or degree of pain; Tibbs was handcuffed for about twenty-five to thirty minutes (from the time of his arrest to his arrival at the lockup facility); he experienced redness on his wrists for less than two days; and he neither sought nor received medical care for any alleged wrist injury.

*Tibbs,* 469 F.3d at 666.

Using the Seventh Circuit decisions in *Tibbs*, *Payne*, *Lester*, and *Herzog* as guidance, the Court would be hard-pressed to conclude that Officer Martin's conduct was unreasonable under the circumstances because Cusack only presents evidence that Officer Martin handcuffed him in a hard and aggressive manner and that he told Officer Martin the handcuffs were too tight. Because Cusack has failed to provide sufficient evidence to raise a genuine issue of material fact, *see* Fed.R.Civ.P. 56(e), the Court grants Defendants' summary judgment motion as to Count I of the Amended Complaint.

**II.     Battery Claim – Count II**

In Count II of his Amended Complaint, Cusack alleges a common law claim of battery. Under Illinois law, a person commits the tort of battery if (1) he acts intending to cause a harmful or offensive contact or an imminent apprehension of such a contact, and (2) harmful contact directly or indirectly results. *Cohen v. Smith*, 269 Ill.App.3d 1087, 1090, 207 Ill.Dec. 873, 648 N.E.2d 329, 332 (Ill. 1995) (citing Restatement (Second) of Torts, § 13 (1965)); *see also In re Estate of Allen,* 365 Ill.App.3d 378, 302 Ill.Dec. 202, 848 N.E.2d 202, 210 (Ill. 2006) ("common-law battery is the unauthorized touching of the person of another").

Defendants contend that Officer Martin cannot be liable for battery because he is protected by the Illinois Tort Immunity Act, which provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such conduct or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202; *see also Smith v. City of Chicago,* 242 F.3d 737, 744 (7th Cir. 2001) ("A public employee is immune from liability while enforcing the law unless their acts are willful and wanton"). "Conduct is willful and wanton when it 'shows an actual or deliberate intention to *cause harm* or which, if not intentional, shows an *utter indifference* to or *conscious disregard* for the safety of others or their property.'" *Smith,* 242 F.3d at 744 (quoting 745 ILCS 10/1-210) (emphasis added).

Cusack's only argument is that Officer Martin is not immune under the Illinois Tort Immunity Act because Officer Martin intentionally touched him in an unauthorized manner. Cusack's argument misses the point. To establish that Officer Martin is not covered by the Illinois Tort Immunity Act, Cusack must set forth some evidence that Officer Martin acted willfully or wantonly when arresting him, namely, that Officer Martin acted with actual or deliberate intention to cause harm or showed an utter indifference or conscious disregard for

8

Cusack's safety. *See Smith*, 242 F.3d at 744. Because Cusack has failed to set forth evidence that Officer Martin's conduct was willful or wanton, Officer Martin is protected by the Illinois Tort Immunity Act. *See* Fed.R.Civ.P. 56(e). The Court thus grants Defendants' summary judgment motion as to Cusack's battery claim in Count II of the Amended Complaint.

### III. False Arrest Claims – Counts III & IV

Because the existence of probable cause to arrest precludes both common law and Fourth Amendment claims for false arrest and is an element in common law malicious prosecution claims, the Court turns to the legal basis of Cusack's arrest. *See Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 762 (7th Cir. 2006) (existence of probable cause to arrest precludes Section 1983 lawsuit for false arrest); *Ross v. Mauro Chevrolet,* 369 Ill.App.3d 794, 798, 308 Ill.Dec. 248, 861 N.E.2d 313 (Ill. 2006) (plaintiff must show lack of probable cause for false arrest and imprisonment claims under Illinois law); *Logan v. Caterpillar, Inc.,* 246 F.3d 912, 921-22 (7th Cir. 2001) (citing *Swick v. Liautaud*, 169 Ill.2d 504, 512, 215 Ill.Dec. 98, 662 N.E.2d 1238 (Ill. 1996) (arrest without probable cause is element of malicious prosecution claim).

Probable cause "is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances." *United States v. Reed,* 443 F.3d 600, 603 (7th Cir. 2006). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 243 n.13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). To have probable cause for an arrest, "law enforcement agents must reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect had committed or was committing an offense." *Washington v. Haupert,* 481 F.3d 543, 547 (7th Cir. 2007). "Determinations of probable cause

are naturally based on probabilities, and a finding of probable cause 'does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime.'" *United States v. Funches,* 327 F.3d 582, 586 (7th Cir. 2003) (citation omitted); *see also Gerstein v. Pugh,* 420 U.S. 103, 121, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Gates,* 462 U.S. at 232 (probable cause "turn[s] on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules").

Viewing the facts in a light most favorable to Cusack, he has presented evidence creating a genuine issue of material fact regarding Officer Martin's probable cause to arrest him for battery. More specifically, the facts that were available to Officer Martin at the time of Cusack's arrest are disputed based on the different accounts of the May 6, 2005 incident as reflected by the deposition testimony of Gibala, Officer Martin, and Cusack. For instance, Officer Martin argues that he relied on Cusack's car being parked illegally and aggressively toward Gibala's car as a basis for arresting Cusack, but Cusack disputes the fact that his car was parked as such. (Pl.'s Stmt. Facts ¶ 9.) Further, Cusack states that he made two calls to 911 informing the police dispatcher that Gibala tried to hit him with his car, but Officer Martin testified that he did not recall what the dispatcher told him. (Defs.' Stmt. Facts ¶ 10.) Moreover, Cusack testified that he told Officer Martin that Gibala tried to hit him with his car. Gibala, on the other hand, informed Officer Martin that Cusack had told him to leave the Butera Market, followed him outside, threw a piece of paper at him, yelled, and pushed him.

In addition, Officer Martin argues that he based his probable cause determination on Cusack's admission that he pushed Gibala, which is another hotly contested fact. (*See* Pl.'s Stmt. Facts ¶ 27; Defs.' Stmt. Facts ¶ 26.) Finally, Officer Martin relies on the fact that Gibala

was calm during the incident and that Cusack was upset and yelling. Cusack disputes that he was yelling in the first instance. (Pl.'s Resp. Defs.' Stmt. Facts ¶¶ 22, 23.)

In sum, there are two – if not three – versions of the May 6, 2005 incident at the Butera Market parking lot based on the deposition testimony of Officer Martin, Gibala, and Cusack. "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Washington,* 481 F.3d at 550 (quotation omitted); *see also Pourghoraishi*, 449 F.3d at 754 ("multiple versions of the facts increase the chances that at least one of those conflicting facts will be material to the outcome of the case."). In other words, it is not the Court's place to determine who is telling the truth. *See Washington,* 481 F.3d at 550. As such, the Court denies Defendants' summary judgment motion as to Cusack's constitutional and state false arrest and false imprisonment claims in Counts III and IV of the Amended Complaint because there is a genuine issue of fact whether Officer Martin had probable cause to arrest Cusack.

### IV.  Malicious Prosecution Claim – Count V

Although there is a genuine issue of material fact whether Officer Martin had probable cause to arrest Cusack for battery, Defendants maintain that Cusack's common law malicious prosecution claim must fail because the criminal proceeding against Cusack was not terminated in a manner indicative of Cusack's innocence. To establish a claim for malicious prosecution under Illinois law, Cusack must show:  (1) Defendants commenced or continued a criminal or civil judicial proceeding; (2) the judicial proceeding was terminated in his favor; (3) there was no probable cause to arrest him; (4) malice; and (5) damages. *Logan,* 246 F.3d at 921-22 (citing *Swick*, 169 Ill.2d at 512); *see also Ross,* 369 Ill.App.3d at 801. "In regard to the second element,

a malicious prosecution action cannot be predicated on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused." *Swick,* 169 Ill.2d at 512.

In this matter, the battery charge against Cusack was dismissed for want of prosecution. "Whether a withdrawal or an abandonment constitutes a final termination of the case in favor of the person against whom the proceedings are brought and whether the withdrawal is evidence of a lack of probable cause for their initiation, *depends upon the circumstances under which the proceedings are withdrawn.*" Cult Awareness Network v. Church of Scientology Int'l, 177 Ill.2d 267, 276, 226 Ill.Dec. 604, 685 N.E.2d 1347 (Ill. 1997) (citation omitted) (emphasis in original). Defendants contend that the charges against Cusack were dropped because Gibala, as the complaining witness, had a work conflict and failed to show up to testify against Cusack. (Defs.' Stmt. Facts ¶ 39, 40.) Cusack counters this evidence by relying on his deposition testimony that Officer Martin told Gibala that if Gibala did not press charges against Cusack, Officer Martin would arrest Gibala instead.[1] (Pl.'s Stmt. Facts ¶ 33.) Officer Martin denies that he made this statement explaining that he merely told Gibala that he needed to go to the police station to sign a complaint against Cusack. (R. 54-1, Defs.' Resp. Pl's Facts ¶ 33.)

Nevertheless, Cusack sets forth evidence that Officer Martin told Gibala that if he did not press charges against Cusack, Officer Martin would arrest Gibala instead. Viewing the facts

---

[1] Any argument that Cusack's self-serving testimony cannot create a genuine issue of material fact is misplaced because testimony, by its very nature, is often self-serving. *See Wilson v. McRae's, Inc.,* 413 F.3d 692, 694 (7th Cir. 2005) ("Most affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a plaintiff's evidence when deciding whether a material dispute requires trial."); *see also Payne v. Pauley,* 337 F.3d 767, 773 7th Cir. 2003) ("a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts").

and all reasonable inferences in a light most favorable to Cusack, a reasonable jury could conclude that Gibala did not show up to testify against Cusack because Gibala, and not Cusack, had committed battery. Thus, any such inference would be "indicative of the innocence of the accused," *see Swick,* 169 Ill.2d at 512, as required for a malicious prosecution claim under Illinois law. The fact that Gibala later testified that his failure to appear in court was due to a work conflict – and not that Cusack did not push him – does not save the day because Cusack has set forth specific facts raising a genuine issue that the dismissal of his claim was indicative of his innocence. *See* Fed.R.Civ.P. 56(e). Thus, the Court denies Defendants' summary judgment motion as to Cusack's malicious prosecution claim in Count V of the Amended Complaint.

V.     **Indemnification Claim – Count VI**

Finally, because the Court denies Defendants' summary judgment motion as to Cusack's state law claims – except for the battery claim – the City of Des Plaines may be liable under the theory of respondeat superior. *See* 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."); *see, e.g., Hanania v. Loren-Maltese,* 319 F.Supp.2d 814, 835 (N.D. Ill. 2004). Therefore, the Court denies Defendants' summary judgment motion as to Count VI of the Amended Complaint.

**CONCLUSION**

For these reasons, the Court grants in part and denies in part Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). Specifically, the Court grants Defendants' motion as to Counts I and II of the Amended Complaint and denies Defendants's motion as to Counts III through VI.

Dated: August 29, 2007

                                 **ENTERED**

                                _____
                                **AMY J. ST. EVE**
                                **United States District Court Judge**